UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **BETTY M. KNIGHT** | * | **CIVIL ACTION NO. 09-0409** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Since 1995 or 1996, Betty M. Knight has filed at least four applications for disability benefits. *See* Tr. 70-71. On August 23, 1996, an Administrative Law Judge ("ALJ") denied what was perhaps Knight's earliest application. *Id*. She appealed the denial to this court, where it was dismissed for failure to prosecute. *Knight v. Commissioner of Social Security*, Civil Action Number 97-2309 (W.D. La. Jan. 4, 2000). On July 1, 1996, Knight filed a subsequent application which an ALJ denied on May 27, 1999. (Tr. 70-71). Knight sought review before the Appeals Council which eventually vacated the ALJ's decision on August 6, 2004, because the record could not be located. *Id*. Meanwhile, on June 28, 2000, Knight filed another application

which was denied by an ALJ on September 28, 2001. *Id*. On September 8, 2005, an ALJ again denied Knight's July 1, 1998, application. (Tr. 67-78).[1]

Knight filed the instant application for Title XVI Supplemental Security Income benefits on October 25, 2005, not long after the latest unfavorable decision on her prior application. (Tr. 102-105). She alleged disability since January 1, 1995, due to arthritis. (Tr. 102). The claim was denied at the initial state agency stage of the administrative process. (Tr. 81, 91-94). Thereafter, Knight requested and received a November 20, 2006, hearing before an ALJ. (Tr. 36-66). However, in a June 19, 2007, written decision, the ALJ determined that Knight was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation analysis that she was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 18-28). Knight appealed the adverse decision to the Appeals Council. The Appeals Council nevertheless denied Knight's request for review; thus the ALJ's decision became the final decision of the Commissioner. (December 9, 2008, Notice; Tr. 3-5).

On March 12, 2009, Knight sought review before this court.[2] She alleges several errors which may be itemized as follows,

1) the ALJ erred in his analysis at Step Two of the sequential evaluation process because he failed to recognize all of plaintiff's severe impairments;

2) the ALJ's residual functional capacity assessment is not supported by substantial

---

[1] The ALJ's decision addressed the period from August 24, 1996 until June 28, 2000. (Tr. 78).

[2] Although the instant complaint was not filed within 60 days of the Appeals Council notice, plaintiff alleges that she obtained an extension of time to file suit. (Complaint, ¶ 5). In any event, by failing to question the suit's timeliness, the Commissioner has waived the issue. *See Weinberger v. Salfi*, 422 U.S. 749, 763-764, 95 S.Ct. 2457, 2466 (1975) (parties may waive 60 day limitations period set forth in 42 U.S.C. § 405).

                                            evidence; and

3)       the ALJ's Step Five determination is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a

physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.
*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step; however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Knight's earliest disability eligibility date is the month following her October 2005 application. 20 C.F.R. § 416.335. Nevertheless, the Commissioner will normally develop a claimant's medical history for at least the 12 months preceding the application date. *See* 20 C.F.R. § 416.912(d)(1).

**I. Steps Two and Three**

The ALJ determined at Step Two of the sequential evaluation process that Knight suffers from severe impairments of degenerative arthritis, vertigo, obesity, and an umbilical hernia. (Tr. 24, 27). He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

Plaintiff contends that the ALJ applied the incorrect standard to determine that her alleged impairments of hypertension, hypothyroidism, and "blurred vision" were not severe. In assessing

5

the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000).  However, when, as here, the ALJ's analysis proceeds beyond Step Two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.  *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987).  Once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.  20 C.F.R. § 416.923.  Indeed, the ALJ recited the foregoing regulation, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments.  *See* Tr. 22-25, and discussion, *infra*.  The critical issue becomes whether the ALJ's residual functional capacity assessment is supported by substantial evidence.

## II.  Residual Functional Capacity Assessment

The ALJ determined that Knight retained a residual functional capacity for work between the light and sedentary exertional levels, with an ability to lift and carry 8 pounds frequently and 15 pounds occasionally.  (Tr. 25, 27-28).[3]  She can walk, stand, and/or sit for 6 hours of an 8 hour

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine

work day, and can frequently push/pull with the lower extremities. *Id*. She can also frequently climb ladders, scaffolds or ropes, kneel, crouch and crawl. *Id*. She also suffers a one-third near vision impairment. *Id*.[4]

Plaintiff essentially argues that the ALJ's residual functional capacity is not supported by substantial evidence. She contends that the ALJ failed to conduct a function-by-function analysis of plaintiff's ability to perform work-related activities. (SSR's 96-8p & 96-9p). However, the ALJ addressed Knight's ability to stand, walk, sit, lift, and perform postural activities. (Tr. 25). Moreover, the ALJ's determination is supported by the examination findings of John McDonald, M.D., as confirmed by plaintiff herself. (Tr. 172-174).

In a report that reflects a January 14, 2005, examination date, Dr. McDonald noted that

---

> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Sedentary work requires:
> . . . lifting no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in
> carrying out job duties. Jobs are sedentary if walking and standing
> are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[4] In her brief, plaintiff suggests that the ALJ's decision is internally inconsistent because in the "Evaluation of the Evidence" section of his opinion he observed that plaintiff is capable of performing a significant range of *sedentary* work, but in the ""Findings" portion of his decision stated that she was capable of performing a significant range of *light* work. *See* Tr. 26-28. This purported inconsistency, however, is illusory. In both the "Evaluation of the Evidence" and the "Findings" sections of his decision, the ALJ consistently determined that plaintiff retained an exertional capacity for work *between* the sedentary and light levels, which is not irreconcilable with a determination that plaintiff is able to perform a significant range of sedentary *and* light work. (Tr. 25, 27)

7

Knight complained of a history of arthritis, hypertension, and hypothyroidism. *Id*. She stated that her joint pain and arthritis had progressively worsened. *Id*. Knight claimed that her pain limited her ability to walk long distances and to perform household chores. *Id*. She indicated that she experienced occasional dizzy spells. *Id*. Dr. McDonald noted that Knight ambulated to the room without difficulty or assistance. *Id*. She was able to rise slowly from a seated position without assistance, stand on her tiptoes and heels, and tandem walk without problems with only a mild imbalance. *Id*. She demonstrated 5/5 strength in all muscle groups, with adequate fine motor movements, dexterity and ability to grasp objects bilaterally. *Id*. Her visual acuity was 20/25 in both eyes. *Id*

McDonald diagnosed degenerative arthritis – knees, hips back; obesity; hypertension; hypothyroidism; and suspected vertigo. *Id*. He indicated that Knight exhibited a decreased range of motion in her cervical and lumbar spine and knees. *Id*. He remarked, however, that her overall effort was questionable. *Id*. McDonald further noted that Knight appeared to have some degenerative changes in her lumbar spine and right knee, but had no neurological deficits on the physical exam. *Id*. She demonstrated adequate manual dexterity on the physical exam. *Id*. McDonald opined that plaintiff could sit, walk, and/or stand for a full workday and lift/carry objects of at least 20 pounds. *Id*.

In short, despite plaintiff's various alleged impairments, including *hypertension, hypothyroidism, and suspected vertigo* – impairments that plaintiff contends the ALJ failed to properly consider – the consultative physician effectively opined that plaintiff could perform light work. Plaintiff contends that Dr. McDonald's opinion does not provide support for the ALJ's decision because the report is dated approximately nine months before she filed the instant

application. The record, however, suggests that the report inadvertently recorded the date of the examination as "05" instead of "06" as a result of the new year. For example, the facsimile date stamp on the top of the report indicates that it was transmitted on "01/16/06." (Tr. 172-176). Moreover, the state agency decision states that the agency received the report on "01/18/2006." (Tr. 91). It is highly unlikely that the consultative physician examined Ms. Knight in 2005 and then retained the report for one year before transmitting it to the state agency. Thus, in all probability McDonald's report addresses Knight's condition during the relevant period.

However, even if McDonald examined plaintiff in 2005, the ALJ recounted McDonald's pertinent work-related findings to plaintiff at the November 2006 hearing, and asked her whether she disagreed with any of them. (Tr. 45-46). The only finding that she disagreed with was that she could no longer lift over 15 pounds because of a hernia. *See* Tr. 46, 48-49. Accordingly, the ALJ discounted McDonald's opinion because it did not contemplate limitations imposed by her more recent hernia impairment. (Tr. 25). Instead, the ALJ essentially incorporated McDonald's limitations, as otherwise confirmed by plaintiff's own testimony, and limited her lifting capacity to 15 pounds – the heaviest weight that she professed she could lift.[5]

The portion of the ALJ's residual functional capacity assessment that is perhaps susceptible to the greatest confusion, is his self-imposed finding that she suffers a one-third near vision limitation, despite his determination that her vision impairment is correctable by glasses.

---

[5] Later during the hearing, plaintiff seemingly contradicted her agreement with Dr. McDonald's findings by testifying to significantly greater work-related limitations. *See e.g.*, Tr. 51, 55-56. However, the ALJ is permitted to resolve inconsistencies in the evidence. Moreover, plaintiff complained of limitations on her ability to walk and perform daily activities to Dr. McDonald during his examination, but he effectively discounted her complaints when he determined that she was capable of light work. *See* Tr. 172-174.

(Tr. 24, 26). To the extent that the ALJ may have overreached by sua sponte determining the effects of Knight's visual impairment in his residual functional capacity assessment, any error was harmless because the record fully supports the ALJ's associated determination that the resulting limitations did not significantly impact her ability to perform work-related activities. *See, Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).[6] In other words, any visual impairment did not limit her ability to perform work-related activities.[7]

Accordingly, the undersigned finds that the ALJ's residual functional capacity assessment is supported by substantial evidence.

---

[6] At the hearing plaintiff testified that she can "see close up," but if "the writing is real small" then she cannot see it. (Tr. 53). In August 2005, plaintiff reported to a medical provider that an optometrist had told her that she needed glasses. (Tr. 168-169). Of course, a claimant will not be found disabled if she fails, without good reason, to follow prescribed treatment. 20 C.F.R. §§ 404.1530, 416.930; *see also*, *Lopez v. Massanari*, 273 F.3d 1094, 2001 WL 1085089 (5th Cir. 8/29/200) (unpubl.). Moreover, according to the record, plaintiff read and completed the disability forms herself. *See* Tr. 137, 144.

[7] Plaintiff contends that the ALJ should have obtained a consultative examination from an optometrist. Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. §404.1517. However, the ALJ need not order a consultative examination at government expense "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)(quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Here, the record contains ample evidence for the ALJ to render a decision.
Moreover, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Plaintiff has not made the requisite showing here.

### III. Step Five

The ALJ concluded at Step Four of the sequential evaluation process that Knight had no past relevant work. (Tr. 26, 28). Accordingly, he proceeded to Step Five. At this step, the ALJ determined that plaintiff was an individual closely approaching advanced age, with a limited education, and no transferable skills. (Tr. 26, 28). Relying upon testimony from a vocational expert, the ALJ found that Knight was capable of making an adjustment to perform other jobs that exist in significant numbers in the national economy. (Tr. 26-28).[8]

Plaintiff's memorandum seems to contest the validity of the hypothetical posed to the vocational expert. Yet, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical substantially incorporated the limitations recognized in her residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.[9]

### IV. Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's decision is

---

[8] The vocational expert identified light, unskilled jobs such as cashier II and ticket seller that plaintiff could perform despite her additional limitations. (Tr. 27-28, 56-66).

[9] Plaintiff correctly observes that if the ALJ had determined that she was limited to sedentary work, then he would have been obliged to find her disabled pursuant to the medical-vocational guidelines. Here, however, the ALJ determined that Knight retained a residual functional capacity between sedentary and light work. Under these circumstances, the regulations advise the ALJ to consult a vocational expert – which he did. *See* SSR 83-12. Moreover, although the vocational expert identified both light and sedentary jobs that someone such as plaintiff could perform, the ALJ relied solely upon the jobs at the light exertional level. (Tr. 27, 63-64).

supported by substantial evidence and remains free of legal error.[10]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 25th day of January 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[10] That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.